## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **BARRY R. RHEUDASIL,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | )   **Case No. CIV-04-1127-HE** |
| | ) |
| **JO ANNE B. BARNHART,** | ) |
| **Commissioner, Social Security** | ) |
| **Administration,** | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Barry R. Rheudasil ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405 (g) seeking judicial review of the Defendant Commissioner's final decision denying Plaintiff's application for supplemental security income payments under the Social Security Act. This matter has been referred to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Upon review of the pleadings, the record ("Tr.") and the parties' briefs, the undersigned recommends that the Commissioner's decision be affirmed.

**Administrative Proceedings**

Plaintiff initiated these proceedings in September, 2002, by filing an application for supplemental security income payments, alleging that he became disabled in August, 1992,[1] as a result of a back injury and difficulties with his right arm [Tr. 56, 57 - 59 and 73]. The claim was denied initially and upon reconsideration [Tr. 36 - 38 and 41 - 42]. At Plaintiff's request, an Administrative Law Judge ("ALJ") conducted a March, 2004,

---

[1]The date of onset was subsequently amended to September 23, 2002, by Plaintiff's counsel [Tr. 126].

hearing where Plaintiff, who was represented by counsel, and a vocational expert testified [Tr. 43 and 122 - 162]. In his April, 2004, hearing decision, the ALJ determined that Plaintiff was not disabled as he retained the capacity to perform light, unskilled jobs which were available in significant numbers in the regional and national economy [Tr. 24 - 31]. The Appeals Council of the Social Security Administration declined Plaintiff's review request, and Plaintiff subsequently sought review of the Commissioner's final decision in this court [Tr. 3 - 5].

## Standard of Review

This court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). However, while this court can neither reweigh the evidence nor substitute its own judgment for that of the ALJ, the court's review is far from superficial. "To find that the [Commissioner's] decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988) (citation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* at 299.

## Determination of Disability

The Social Security Act defines "disability" for purposes of supplemental security income benefits as the "inability to engage in any substantial gainful activity by reason of

2

any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A).  The Commissioner applies a five-step inquiry to determine whether a claimant is disabled.  *See* 20 C.F.R. § 416.920(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-752 (10th Cir. 1988) (describing five steps in detail).  Plaintiff bears the initial burden of proving that he has one or more severe impairments.  20 C.F.R. § 416.912; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985).  Where Plaintiff makes a prima facie showing that he can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show that Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy.  *Turner*, 754 F.2d at 328; *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984).  In this case, the ALJ determined that Plaintiff could not perform his past work and, consequently, continued the inquiry through the fifth step.

**Plaintiff's Claims of Error**

It is Plaintiff's first contention that the residual functional capacity formulated by the ALJ failed to include all of Plaintiff's physical limitations.  Specifically, Plaintiff claims that the ALJ failed to include limitations imposed by the opinion of Plaintiff's treating physician as well as limitations supported by the report of the consultative examiner.  As his second claim of error, Plaintiff maintains that the ALJ erred in his analysis of Plaintiff's credibility.

**Analysis of the ALJ's Decision**

The ALJ determined that Plaintiff - fifty years old with three years of college education and with past work experience as a landscape laborer, a construction laborer and a kitchen helper – was severely limited by residuals from right elbow surgery in 1992 and back surgery in 1994 as well as by degenerative and discogenic disorders of the back [Tr. 25 - 26]. In support of this conclusion, the ALJ provided a detailed summary of the medical evidence of record.

Melinda Steelmon, D.O., performed a consultative examination of Plaintiff on November 20, 2002, and noted that Plaintiff had undergone back surgery approximately seven years earlier but continued to report pain across his low back and hips with the pain radiating down his legs, particularly the right leg [Tr. 26 and 98]. Plaintiff also reported an ulnar nerve release procedure on the right and further advised that he did not undergo a recommended carpal tunnel repair. *Id.* Plaintiff told Dr. Steelmon that he had continuing, recurring numbness, tingling, stiffness and pain as well as weakness, loss of strength and inability to hold objects on his right, dominant, side. *Id.* Plaintiff also relayed a history of several head injuries, including a concussion and a fractured skull. *Id.* Dr. Steelmon observed a defect in the back of Plaintiff's head which was palpable and noted Plaintiff's complaint of chronic cephalgia, of some pain radiating into his left eye region, of light sensitivity and of the need to wear sunglasses in any type of bright light. *Id.*

On examination, Plaintiff was alert and oriented and in some moderate discomfort as he performed the activities involved in the examination [Tr. 26 and 99]. His

extremities were free of cyanosis, clubbing or edema; there was a great deal of crepitus in movement of the right forearm at the elbow as well as a positive Tinel and Phalen test on the right [Tr. 26 and 100]. Deep tendon reflexes were decreased globally on the right extremity, were normal on the left upper extremity and were decreased on the lower left extremity. *Id.* Sensory examination showed a global decrease in the right upper extremity, C6-C7 and T-1, normal on the left upper extremity and a decrease in L4 and L5 bilaterally with the most significant decrease being in the L5. *Id.* Plaintiff had adequate finger-to-nose, alternating hand movements and heel-to-shin testing. *Id.* Plaintiff had a fairly normal gait; he walked without assistive devices; he heel and toe walked weakly secondary to back pain; his gait was stable and slightly slow; he walked in a very stooped fashion with a wide-based gait; and, he did appear to be in pain, especially when stepping up onto or off of the step and the table in the examination room. *Id.* With regard to strength and tone, Plaintiff had a decrease in grip strength on the right, approximately 3/5; major muscle groups of the forearm were also decreased at 3 to 4/5; the upper arm was normal at approximately 5/5 and, the left upper extremity was normal with a grip strength and all major muscle groups at 5/5. *Id.* Lower extremities had a global weakness of 3 to 4/5 in all major muscle groups. *Id.* Range of motion testing revealed a decrease in the lumbosacral spine in the back; other findings included a positive straight leg raising test, sitting and standing. *Id.*

In her findings, Dr. Steelmon noted a history of low back injury, status post surgery, with chronic pain, worsening over time and radiating down the lower extremities, severe muscle spasm, stiffness, loss of strength, numbness and tingling. *Id.*

Objectively, there was decreased sensory examination, decreased strength testing, positive straight leg raising both sitting and lying as well as weakness in these regions. *Id.* Also noted was a history of ulnar nerve entrapment on the right, status post release, with continuing crepitus, pain, numbness and weakness in that extremity. [Tr. 26 and 101]. Objectively, Plaintiff had a positive Phalen and Tinel sign and both decreased sensory and strength in that region. *Id.* There was a great deal of crepitus on movement as well as tenderness in the region of the elbow on palpation. *Id.* There was no gross deformity; there were surgical scars which were consistent with the history of surgery. *Id.* Dr. Steelmon also noted a history of head injury with skull fracture and concussion with neurologic damage with pain which radiates throughout the head and into Plaintiff's left eye. *Id.* Objectively, there was a palpable defect on Plaintiff's skull. *Id.* Further found was a history of tobacco abuse, chronic cephalgia, multiple nasal fractures with chronic sinusitis, chronic dizziness, a jaw fracture, sleep apnea and depression secondary to chronic pain [Tr. 26 - 27 and 101].

John Haddock, M.D., reported on January 13, 2003, that Plaintiff had no regular doctor to give him pain medications or examinations [Tr. 27 and 109]. The doctor observed that Plaintiff had various scars and had relayed that he was seeking disability and that he had a severe tremor in his hands as well as pain. *Id.* On February 17, 2003, Plaintiff was noted to have a high pulse rate of 130+ per minute and possible atrial tachycardia [Tr. 27 and 107]. The ALJ observed that the progress notes from the Haddock Clinic dated February 17, 2003 through January 14, 2004, were not detailed [Tr. 27 and 120 - 121]. These notes reveal that Plaintiff was given prescriptions for Lortab and Soma

for complaints of back pain and spasm and a painful cyst on his left wrist.  *Id.*  Instances of severe pain and tenderness were noted as were episodes when Plaintiff's back was hurting after doing hard work and lifting.  *Id.*

The ALJ concluded that while Plaintiff's impairments did not meet or equal the criteria of any Appendix 1 listed impairment,[2] the objective medical records and the hearing testimony established that Plaintiff had underlying medically determinable impairments which could reasonably cause some of his alleged symptoms [Tr. 27]. Accordingly, the ALJ proceeded to assess Plaintiff's residual functional capacity ("RFC"), i.e., the range of work activities which Plaintiff could still perform despite his impairments, by considering not only the objective medical evidence but, in addition, Plaintiff's subjective allegations.  *Id.*  The ALJ stated that in making this assessment he was required to give careful consideration to such matters as the nature, location, onset, duration, frequency, radiation and intensity of Plaintiff's pain as well as to precipitating and aggravating factors, Plaintiff's use of pain medications, his functional restrictions and his daily activities.  *Id.*

To this end, the ALJ noted Plaintiff's testimony with respect to his subjective complaints and the factors pertinent to the evaluation of such complaints: Plaintiff stated that he is five feet, eight inches tall and weighs 140 pounds [Tr. 28 and 131]; he has a GED and seventy-two hours of college credit in design and technical production [Tr. 28 and 127 - 128]; he last worked in 2000 as a dishwasher and had back and leg pain which he said prevented him from even standing [Tr. 28 and 131]; he had arm surgery in 1992

---

[2]*See* 20 C.F.R., Part 404, Subpart P, Appendix 1.

[Tr. 28 and 131 - 132]; Plaintiff was arrested in 2003 for disturbing the peace by having his music too loud [Tr. 28 and 137 - 138]; he uses alcohol but not drugs [Tr. 28 and 138]; as a result of an on-the-job injury, Plaintiff had back surgery in 1994, followed by four to six months of twice-weekly physical therapy, and subsequently received a worker's compensation settlement [Tr. 28 and 132 - 135]; at some point after the surgery, Plaintiff did gardening work, although not on a regular basis, for six years [Tr. 28 and 136]; he takes medication prescribed by Dr. Haddock for pain, for his heart and to help him relax and sleep [Tr. 28 and 138 - 139]; Plaintiff reported to Dr. Haddock on two occasions in 2003 that he was doing hard work – garden work, landscaping, shoveling, pulling weeds – which caused his back to hurt [Tr. 28 and 139 - 140]; Plaintiff rises at 9:00 a.m. on a daily basis, takes care of his own personal hygiene, dresses himself, takes medication with toast and coffee, does laundry, loads his dishwasher, takes his trash out, is able to lift items weighing ten pounds, tries to limit his smoking to about a pack a day, and likes to camp and swim [Tr. 28 and 142 - 147]; he has no mental health problems and takes no medication for anxiety, nerves or depression [Tr. 28 and 147]; he has back pain "just all the time, everyday" and right arm pain that goes from his elbow into his neck [Tr. 28 and 148]; his neck pain is dependent on his back and arm pain [Tr. 28 and 148 - 149]; he can pick up simple things with his right hand, can turn a door knob but usually takes lids off of jars with his left hand, and has cramps in his right forearm when he writes [Tr. 28 and 150 - 151]; he stated that he could sit in a kitchen chair slumped over for thirty minutes and have back pains when he stands up [Tr. 28 and 151]; he can stand in one place for fifteen to thirty minutes and can walk for five blocks [Tr. 28 and 151 - 152];

8

squatting and bending create problems [Tr. 28 and 152] and,  his only difficulty with sleep is irritation from muscle pulls, and difficulty in getting up in the morning because his muscles retract [Tr. 28 and 152 - 153].

The ALJ concluded that Plaintiff's statements concerning his impairments and their impact on his ability to work were not supported to the extent alleged by objective medical findings [Tr. 28].  Moreover, the ALJ determined that although Plaintiff has pain and discomfort, he has overstated his signs and symptoms and exaggerated his physical limitations.  *Id.*  Other than from February, 2003, until January, 2004, when Plaintiff saw Dr. Haddock for medications, he has not had a treating physician nor has not sought ongoing orthopedic treatment.  *Id.*  No physician has placed limitations on Plaintiff.  *Id.* He continued to perform heavy gardening work in 2003.  *Id.*  Based on the foregoing, the ALJ determined that Plaintiff retained the RFC to meet the exertional demands of light work in which he would only occasionally stoop and would have a mild level of fatigue and discomfort.  *Id.*

Relying on the testimony of the vocational expert, the ALJ concluded that Plaintiff could no longer perform his past relevant work but could perform light unskilled work as a messenger, a storage rental clerk or as an information clerk [Tr. 30].  Consequently, Plaintiff was not disabled within the meaning of the Social Security Act [Tr. 30 - 31].

**Residual Functional Capacity/Treating Physician Opinions/Credibility**

Plaintiff challenges the RFC assessed by the ALJ for light work with only occasional stopping and with a mild level of fatigue and discomfort, alleging that such RFC fails to take into account the severity of the impairments included in the medical

records from the treating and consultative physicians and fails to fully address Plaintiff's physical limitations due to his spinal impairment and arm injury.  Specifically, Plaintiff points to Dr. Haddocks's notation that Plaintiff had severe tremor of hands with pain and that he had pain and spasm of the back and pain with a cyst[3] of the left wrist, contending that these are "opinions" of a treating physician which should have been given appropriate weight by the ALJ.  Plaintiff maintains that "[a]n individual suffering from severe back spasm and pain and wrist pain with cyst should have further limitations included in the RFC." [[Doc. No. 15, Barry Rheudasil's Brief and Statement of Position with Authorities, page 5].  In addition, Plaintiff quotes at length from the consultative examination report of Dr. Steelmon, repeating Dr. Steelmon's objective findings of muscle spasm, tenderness, pain, crepitus, positive signs, decreased reflexes, decreased grip strength and weakness.  Plaintiff argues the "[t]he ALJ makes note of these findings but fails to apply their result to claimant's RFC."  *Id.* at 6.[4]

Contrary to Plaintiff's argument, the RFC formulated by the ALJ fully accounted for the conditions and symptoms noted by Drs. Haddock and Steelmon.  The ALJ specifically determined that Plaintiff suffered from residuals from back and arm surgery and that he, in fact, experienced pain with related limitations which limited him to <u>light</u>

---

[3]There is no evidence in the record that this cyst was a permanent impairment with resulting limitations.  Plaintiff makes no reference to a cyst at the administrative hearing and, when specifically asked by the ALJ what physical or mental impairments prevented him from working, Plaintiff did not mention a cyst but stated that "it's a continuous back pain, continuous arm stress and it's just - - it - - it does not go away." [Tr. 132].

[4]Plaintiff also relies upon Dr. Steelmon's recitation of his reported symptom of dizziness and lightheadedness, presumably resulting from a skull fracture.  The record reflects, however, that Dr. Steelmon's only <u>objective</u> finding with respect to Plaintiff's <u>history</u> of head injury with skull fracture "is a palpable defect on the skull. " [Tr. 101].

work[5] – as compared to his previous medium, heavy and very heavy work[6] –  with only occasional stooping and with a mild level of fatigue and discomfort.  Plaintiff is unable to point to any "opinion" of either physician, or to any objective evidence,  which imposes any type of restriction – sitting, standing, walking, lifting – upon Plaintiff or which purports to conclude that he is disabled or in any way limited in his ability to work as a result of either his physical limitations or his pain.  *See* 20 C.F.R. § 416.927 (a) (2).

   In considering Plaintiff's subjective testimony that he suffers from disabling symptoms as a result of his impairments, the ALJ assessed Plaintiff's credibility, adhering to the mandate of 20 C.F.R. § 416.929 (c) and Social Security Ruling 96-7p, 1996 WL 374186.  He addressed the delineated topics including the location, intensity and factors precipitating Plaintiff's pain [Tr. 27 - 28].  Tying each of his findings to the evidence in the record, the ALJ recited Plaintiff's rather significant daily activities and focused on his limited resort to medical treatment and on the fact that he was performing heavy garden work in 2003, a time in which Plaintiff claimed he was prohibited from working due to continuous, disabling pain.  *Id.*  He concluded that Plaintiff did, in fact, have pain and

---

   [5]The vocational expert identified three light, unskilled occupations which she believed would be appropriate for Plaintiff in light of the RFC assessed by the ALJ.  On examination by Plaintiff's counsel, the vocational expert testified that even if the RFC were further limited by the ability to stand for only thirty minutes at a time and/or to walk for five blocks, both for a maximum of two hours out of an eight hour day, the number of these jobs might be reduced but the jobs would not be eliminated [Tr. 157 - 160].  Moreover, the vocational expert testified that if the RFC were even further limited by the ability to perform fine and gross manipulation with the dominant arm for only one third of an eight hour day, the information clerk position would not be eliminated [Tr. 160 - 161].

   [6]*See* Tr. 157.  That the ALJ determined that Plaintiff was now only able to perform light work in contrast to his previous ability to work at the medium, heavy and very heavy exertional levels, is indicative of the fact that the ALJ acknowledged the objective findings in Drs. Haddock and Steelmon's records and reports.

discomfort but that he overstated his symptoms and exaggerated his physical limitations [Tr. 28]. The ALJ's assessment of Plaintiff's credibility will "not be upset if supported by substantial evidence." *White v. Massanari,* 271 F.3d 1256, 1261 (10th Cir. 2001). "'Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence.'" *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995) (quoting *Diaz v. Secretary of Health & Human Services,* 898 F.2d 774, 777 (10th Cir. 1990)).

The ultimate question on review is not whether the reviewing court agrees with the ALJ's factual findings or whether another fact-finder might have come to a different conclusion. A reviewing court may "neither reweigh the evidence nor substitute [its] judgment for that of the [ALJ]." *Casias v. Secretary of Health & Human Services,* 933 F.2d 799, 800 (10th Cir. 1991). The ultimate question, instead, is whether the ALJ's finding is supported by substantial evidence in the record as a whole and the answer here is clearly affirmative.

## RECOMMENDATION

For the foregoing reasons, it is recommended that the final decision of the Commissioner be affirmed. The parties are advised of their right to object to this Report and Recommendation by May 23, 2005, in accordance with 28 U.S.C. §636 and Local Civil Rule 72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

    ENTERED this 3rd day of May, 2005.

                                    BANA ROBERTS
                                    UNITED STATES MAGISTRATE JUDGE